**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Louis J. ROUSSEL, Jr., et al., Defendants.**

**Civ. A. No. 76–511–C6.**

United States District Court, D. Kansas.

Jan. 25, 1980.

Irwin M. Borowski, Theodore A. Levine, Edward D. Herlihy, Richard J. Beckmann, S.E.C., Washington, D. C., Steve McGinnis, Dave Watson, S.E.C., Fort Worth, Tex., for Securities and Exchange Commission.

Bordon, Arata, McCollam & Watters, Andrew L. Gates, New Orleans, La., for Clark Brandon.

Burke & Ballard, Charles B. Mayer, New Orleans, La., for Mick, Stack Associates, Inc., Kenneth Mick, Richard Smith, Robert Adrian and F. Scott Perkins.

Phelps, Dunbar, Marks, Claverie & Sims, Rutledge C. Clement, Jr., Edward J. Gay, III, New Orleans, La., for Scott Perkins; Robert A. Schartz, Schartz & Irwin, Wichita, Kan., of counsel.

Walter C. Williamson, Wichita, Kan., for Mick, Stack Associates, Richard Smith and Robert Adrian.

Ross D. Alexander, Wichita, Kan., for Kenneth Mick.

## ORDERS ON MOTIONS FOR SUMMARY JUDGMENT

WESLEY E. BROWN, District Judge.

The Securities and Exchange Commission (SEC) began this action, a complaint for Injunction, in the United States District Court for the Eastern District of Louisiana, naming as defendants, Louis J. Roussel, Jr., and fifteen other individuals and corporations. It is alleged that in 1975, Roussel, aided and abetted by the National American Life Insurance Company (NALICO), and the other defendants, engaged in an unlawful scheme to obtain control of a Wichita, Kansas insurance holding company, Farm & Ranch Financial, Inc. (Farm & Ranch).

Shortly after the action was filed in Louisiana, all defendants, other than the "Kansas defendants," consented to injunctive orders which were entered against them. Thereafter, and on November 29, 1976, this action was transferred to this District for further proceedings.

The "Kansas defendants" who remained in the case after transfer to this district are, Mick Stack Associates, Inc. (Mick Stack), a Wichita securities broker-dealer, and its principals and employees, Kenneth Mick, Richard Smith, and Robert Adrian. These defendants failed to plead, or to otherwise defend, so on March 15, 1979, the SEC filed Motion for Judgment by Default, or in the Alternative, moved for Summary Judgment. (Dkt. 3). The Clerk of Court entered default pursuant to the provisions of Rule 55, Fed.R.Civ.Proc. (Dkt. 6) but thereafter the defaulting defendants filed An-

swers and Motions to Dismiss. (Dkts. 7, 8, 9 and 10).

At hearing held on June 25, 1979, on plaintiff's Motion for Judgment by Default, the Court determined that the default should be set aside, pursuant to Rule 55(c), Fed.R.Civ.Proc., inasmuch as Answers had been filed, and the parties agreed that the matter should be submitted to the Court upon its merits.

Thereafter, argument was heard upon plaintiff's Motion for Summary Judgment, and upon defendants' Motions to Dismiss. At this hearing, counsel was able to stipulate that the evidence already before the Court accurately reflected the facts that each party would present, should a trial on the merits be had.

The evidence before the Court consists of transcripts of testimony and exhibits to these transcripts, and other documents obtained from the defendants and others during an investigation conducted by the Securities and Exchange Commission in 1975. These documents had previously been filed with the Court in support of plaintiff's Motion for Judgment by Default. Excerpts from this evidence appear as Exhibits to briefs, and, at the request of the Court, counsel has submitted specific excerpts from the transcripts for the Court's attention. It should be noted that, in addition to portions of the evidence, specifically referred to by counsel, the Court has consulted the entire transcripts of testimony by defendants, Louis Roussel, Jr., Kenneth Mick, and the transcript of the testimony of Michael J. Shada, vice-chairman of the Board of Directors of National American Life Insurance Company.

After considering this evidence, the Court determines that the Motions to Dismiss of defendants should be overruled, and that the Motion for Summary Judgment of plaintiff should be sustained.

In the complaint filed in this action, the SEC alleges that Mick, Stack Associates, Inc., Kenneth Mick, Richard Smith, and Robert Adrian, violated Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b), and Rules 10b–5 and 10b–13, 17 C.F.R. 240.10b–5 and 240.10b–13, in connection with their activities in aiding and abetting the attempt by defendant Roussel to take over the insurance company, Farm & Ranch Financial, Inc. In particular, it is alleged that these defendants, while acting as managers of a tender offer for the stock of Farm & Ranch, purchased Farm & Ranch shares from Mick Stack customers in the open market, outside the tender offer. Section 10(b) of the Exchange Act, and Rule 10b–13 thereunder, prohibit persons from making simultaneous tender offers for, and market purchases of, the same security.

In addition, it is alleged that the defendants, while purchasing Farm & Ranch shares from their customers at $3.50 to $5.00 per share, failed to disclose to these persons that Mick Stack had a standing purchase order from Roussel to purchase Farm & Ranch shares for $5.20 per share and that the profits derived from such market purchases and sales to Roussel would be greater than those received for acting as managing dealer for the tender offer. It is further alleged that defendants failed to disclose that the shares acquired by Mick Stack in the open market for Roussel would reduce the number of shares available for successful completion of the tender offer. The SEC also charges that defendants failed to disclose to their customers that Roussel was acquiring over 10% of the stock of Farm & Ranch in violation of Kansas law. In this connection it should be noted that K.S.A. 40–3304 prohibits the control of any domestic insurance company without prior approval of the Kansas Department of Insurance. K.S.A. 40–3302(c) defines "control" as existing when any person holds 10% or more of the voting securities of an insurance company.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Thus, Section 10(b) of the Exchange Act and Rule 10b–5 broadly prohibit all fraudulent and deceptive conduct "in connection with the purchase or sale of any security."

Rule 10b–13, 17 C.F.R. 240–10b–13 prohibits a purchase of securities, outside of the tender offer, by a person making the tender offer:

(a) *No person who makes a cash tender offer or exchange offer for any equity security shall, directly or indirectly, purchase, or make any arrangement to purchase, any security* (or any other security which is immediately convertible into or exchangeable for such security), *otherwise than pursuant to such tender offer* or exchange offer, from the time such tender offer or exchange offer is publicly announced or otherwise made known by such person to holders of the security to be acquired until the expiration of the period, including any extensions thereof, during which securities tendered pursuant to such tender offer or exchange offer may by the terms of such offer be accepted or rejected . . .. (Emphasis supplied.)

A review of the evidence submitted to the Court establishes the following facts:

Around January 31, 1975, Louis J. Roussel, Jr., the controlling person of National American Life Insurance Company, instructed Michael J. Shada, of NALICO, to purchase shares of Farm & Ranch common stock.

Early in February, 1975, Shada went to Wichita, Kansas, and contacted Kenneth Mick, instructing him to purchase a "substantial" amount of Farm & Ranch stock, for Roussel, at $5.00 per share, a price which was greatly in excess of the then current market price for Farm & Ranch stock. Arrangements were made, whereby defendant Mick, Stack Associates, Inc., were to resell these shares to Roussel at a total price of $5.20 per share, thus establishing a profit margin of 20 cents per share.

On or about February 21, 1975, defendant Mick telephoned Shada and Roussel in New Orleans and advised them that Mick Stack had purchased nearly 2,000 shares of Farm & Ranch, pursuant to Shada's instruction. Roussel directed Mick to deliver the shares to an entity known as Miocine Oil Company (Miocine), a company owned by the chairman of the board of directors of NALICO, Francois (Frank) D. V. de La Barre and his brother. Roussel gave Mick Miocine's address and IRS Identification Number.

Defendants Smith and Adrian also knew that Roussel had placed the order in Miocine's name.

Mick Stack immediately sold 1,820 shares to Miocine at $5.20 per share. (Exhibit D, Transcript of Kenneth Mick, May 30, 1975, Ex. M–1).

During the period from February 12, 1975, through February 27, 1975, Mick Stack sold to Miocine, pursuant to Roussel's standing order, a total of 8,820 shares of Farm & Ranch at $5.20 per share. These shares had been purchased from customers of Mick Stack at prices ranging from $3.50 to $5.00 per share. (Ex. D, Transcript of Kenneth Mick, Ex. M–1).

On February 28, 1975, Roussel caused NALICO to publicly announce a tender offer at $5.20 per share for all shares of the common stock of Farm & Ranch by filing with the Commission a statement purporting to contain the information required by Schedule 13D. (Ex. A, Appendix, Dkt. 15). This schedule is a form which is required when a person is purchasing over 5% of a company's outstanding securities.

The tender offer provided that if less than 300,000 shares were tendered, NALI-

CO could reject all shares tendered, and terminate the offer.

NALICO also filed with the Kansas Insurance Department a "Form A," which the State of Kansas requires to be filed by any person attempting to gain control of an insurance company, or insurance holding company in Kansas. (Exhibit to Transcript of Kenneth Mick, Ex. M–3). NALICO mailed a copy of Form A to all stockholders of Farm & Ranch.

The NALICO Form A falsely represented that "no subsidiaries of National American Life Insurance Company, no officers or directors thereof, and no persons affiliated with National American Life Insurance Company have effected any transactions in such stock within the last 60 days." (P. 33, Ex. A, Appendix, supra). This misrepresentation was made despite the defendants' knowledge of the previous purchases of Farm & Ranch shares by Roussel through Miocine.

The tender offer was to become effective on March 18, 1975, and NALICO retained Mick Stack as managing dealer to solicit Farm & Ranch shareholders to tender their stock. (Ex. A, Appendix, p. 30, and Exhibit M–3, Item 11, p. 8).

As managing dealer of the tender offer, Mick Stack received 7 cents and the salesman who solicited the tender received 7 cents for each tendered share, for a total commission of 14 cents per share under the tender offer. (Ex. G, p. 61). In contrast, Mick Stack, and its employees received a total compensation of 20 cents per share by purchasing Farm & Ranch stock from customers and reselling directly to Miocine pursuant to Roussel's standing offer. Of the 20 cents per share, Mick Stack received 10 cents per share, the salesman received 6 cents per share, and Kenneth Mick, personally, received 4 cents per share. (P. 61, Transcript of Smith and Exhibit G, p. 61).

During the period from February 28, 1975 through April 9, 1975, Kenneth Mick, Smith and Adrian solicited Mick Stack's purchase in the open market of 121,725 shares of Farm & Ranch stock from customers at $5.00 per share, which Mick Stack immedi-

ately resold to Miocine at $5.20 per share. (Ex. D). Mick Stack continued to purchase in the open market through May 23, 1975, even though the defendants were aware that the Securities and Exchange Commission was investigating the transactions. (Exhibit H, Affidavit of McGinnis). Although Mick Stack claimed it was purchasing such shares for its own account and risk, there was no risk because of Roussel's standing purchase order.

In soliciting shareholders, Mick, Smith and Adrian and other salesmen of Mick Stack recommended that stockholders of Farm & Ranch sell directly to Mick Stack instead of tendering shares to NALICO, claiming that the tender offer might be withdrawn should a minimum of 300,000 shares not be tendered. (Exhibit I, Transcript of Mick, Exhibit M–8, pp. 7–10, 15, 18). The defendants failed to disclose to Farm & Ranch stockholders that this manner of disposing of the shares was more profitable to Mick Stack, and to Mick, and that the shares acquired in the market purchases would reduce the number of shares available for the tender offer.

The defendant Mick Stack, through defendants Kenneth Mick, Smith and Adrian, and its salesmen, failed to disclose to their customers that the shares acquired by Mick Stack would be immediately resold to Roussel for $5.20 per share. In addition, these defendants failed to disclose that by assisting Roussel to acquire 130,545 of 897,074 shares of Farm & Ranch outstanding, they were aiding and abetting violations of Kansas insurance law, since K.S.A. § 40–3304 prohibited the control of a domestic insurance company without prior approval of the Kansas Department of Insurance.

Currently, Mick Stack is still a registered broker-dealer in Wichita, Kansas, with defendants Smith and Adrian as president and vice-president, respectively. Kenneth Mick is a principal of Mult-I-Vest Corporation of Kansas, Inc., a Wichita securities broker-dealer. (Ex. H, Paragraph 7, Affidavit of Steven K. McGinnis, March 7, 1979).

The Court is satisfied that the factual situation set out above is without dispute. The transcripts and documents filed by plaintiff establish that in the purchase and sale of securities the defendants Mick Stack, Kenneth Mick, Smith and Adrian together engaged in a course of business which acted to defraud the stockholders of Farm & Ranch tendering their shares for sale, and that such acts clearly violated the provisions of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder, which prohibit fraudulent and deceptive activities.

It is likewise clear that these defendants did violate Rule 10b–13, 17 C.F.R. 240.10b–13 which prohibits a person who is making a tender offer from purchasing stock in the open market outside the tender offer. It is clear that Rule 10b–13 was adopted to expressly protect the shareholder from fraudulent and manipulative devices and practices which might be involved for persons tendering stock in response to a cash tender offer. See *Warren v. Bokum Resources Corp.*, 433 F.Supp. 1360, 1366 (D.C.N.M. 1977).

For the foregoing reasons, the Court must find and conclude that defendant's Motions to Dismiss for Failure to State and claim must be denied, and that plaintiff's Motion for Summary Judgment must be granted. Accordingly,

IT IS ORDERED, that the Motions to Dismiss of defendants Mick Stack, Kenneth Mick, Richard Smith, and Robert Adrian be, and they are hereby OVERRULED.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment be, and it is hereby SUSTAINED.

IT IS FURTHER ORDERED that Counsel for Plaintiff prepare, circulate and submit an appropriate Judgment of Permanent Injunction to be entered in this action in accordance with the foregoing findings, against the defendants Mick, Stack Associates, Inc., Kenneth Mick, Richard Smith, and Robert Adrian.